B. F. STEWART, Respondent, v. QUINCY, OMAHA & KANSAS CITY RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, April 4, 1910.

1. TRESPASS: Damages: Duty of Injured Person to Mitigate or Prevent. A person against whom a trespass is committed must use ordinary care to prevent or lessen damages to himself. A failure so to do shows a want of good faith and fair dealing.

2. ———: ———: Duty to Extinguish Fire. A farmer who sees a fire which he could easily extinguish is guilty of contributory negligence if he permits it to burn, relying on the wind not changing, when the conditions indicated a likelihood of the fire spreading.

3. PLEADING: Contributory Negligence. In the absence of a plea of contributory negligence, defendant cannot ask a peremptory instruction on that issue unless it is established by plaintiff's evidence.

4. NEGLIGENCE: Railroads: Obstacles on Crossings: Frightening Animals. A railroad company needlessly permitting a

telephone wire to lie on a farm crossing for a long time is liable to the owner of a colt which is frightened by the wire, runs away and is killed while so running.

5. ———: ———: ———: **Contributory Negligence.** A farmer who knows a telephone wire is lying on a farm crossing, on a railroad company's right of way, is not negligent in failing to remove it, nor in driving animals over the crossing unless the danger is glaring and imminent.

Appeal from Daviess Circuit Court.—*Hon. Arch B. Davis,* Judge.

REVERSED AS TO FIRST COUNT, AFFIRMED AS TO SECOND COUNT.

*Dudley & Selby, J. G. Trimble* and *Willard P. Hall* for appellant.

*J. C. Wilson* and *Garland Wilson* for respondent.

BROADDUS, P. J.—The petition in this case is in two counts. In the first, plaintiff claims damages for injury to his meadow and the hay crop thereon caused by fire alleged to have been started by a spark emitted from a passing engine on defendant's railroad. In the second count, plaintiff claims damages for a mule colt killed at a crossing of defendant's railroad on plaintiff's farm, alleging in the petition that the death of the animal was the direct result of defendant's negligence. The answer to the first count is a general denial; to the second, a general denial and plea of contributory negligence. At the trial, defendant requested the court to give a peremptory instruction as to each count of the petition but the requests were refused and the case was sent to the jury on both counts. The issue of contributory negligence was not embraced in any of the instructions asked by defendant. Verdict and judgment were for plaintiff on the first count for $45, and on the second count for $75. Defendant appealed.

The only point advanced here by defendant for a reversal of the judgment on the first count is that the evidence discloses that negligence of the plaintiff directly contributed to the burning of the meadow. Contributory negligence being an affirmative defense cannot be treated as an issue of fact to go to the jury unless it be pleaded in the answer. Where, as in the case in hand, the defendant omits to plead it as a special defense, contributory negligence will not be permitted under a demurrer to the evidence to defeat the cause of action, except in cases where existence of such negligence as a proximate cause of the plaintiff's damage appears as an indisputable conclusion from the facts and circumstances in evidence most, favorable to plaintiff. If there is any room for reasonable minds to differ about the inference that should be drawn from the evidence, the issue becomes one of fact, not of law, and the defendant cannot avail himself of it because of his failure to raise it in his answer.

This question requires an examination of all the material evidence bearing on that issue. Plaintiff's farm is located in Daviess county, is bisected by defendant's railroad through it from northeast to southwest. The right of way is of the usual width, one hundred feet. The plaintiff's house is situated on the north side of the railroad, and the meadow east of the house and south of the railroad. The engine which set out the fire passed going southwest about noon while plaintiff was eating his dinner. About one o'clock he left his house in a wagon and drove to the southeast part of his farm where he had been previously working. In crossing the railroad he noticed a small fire on the right of way which had then burned over about ten square feet of ground. He passed on without stopping to put the fire out, which he could have done without much effort, and drove on to his work. At about two o'clock his wife came to him and informed him that the meadow was afire. He hastened to the place and with the assistance

of another person, he extinguished the fire after it had destroyed the grass growing on his meadow and some that had already been harvested.

It is contended that the weather was very dry and had been for so long a time that grass and other vegetation were in a most inflammable condition. There is some confusion as to which way the wind was blowing. At first plaintiff stated that when he went to his work after dinner it was blowing from the south but that it had changed subsequently and was blowing from the northwest at the time he was at the fire in the meadow, and he is corroborated in this respect by the person who assisted in putting it out.

When he first discovered the fire it was within about ten rods of his meadow which adjoined defendant's right of way until it got in proximity to plaintiff's meadow and then we presume that the wind at that time blowing from the northwest caused it to enter and spread out over the meadow. The undergrowth consisted of clover which was entirely destroyed, but some of the stalks of the timothy were left standing.

A witness for defendant, plaintiff's brother, testified that the fire from the place where it started could be seen where it had burned along the side of the fence and then gone south into the meadow. We refer to this evidence of defendant to strengthen the inference that there was combustible material on the right of way which fed the flames as it progressed northward. The defendant's tracks prevented a barrier to its progress in a direct line north. As it was, the south wind naturally carried it alongside of this barrier in a northeasterly direction towards plaintiff's meadow. And it is a well-known fact that fires of this kind will deviate from a direct line from that driven by the wind and spread out on all sides of the general direction, and that if the conditions are favorable it will then turn and burn against the wind.

No class of persons is more familiar with the characteristics of a country fire when vegetation is dry and combustible than farmers. They have a wholesome fear of fires during such times and every :one of ordinary prudence acts promptly to extinguish them, for if left burning no man can tell whither it will go or what it will destroy. All know that a little spark may kindle a great conflagration.

Under the, circumstances it was the duty of plaintiff as a prudent man to have extinguished the fire when he first noticed it a short distance from his meadow. He should have known that with a south wind blowing in all probability the wind would drive the fire along the right of way until it reached a position close to his meadow, and spread out and enter into it and destroy his grass whether the wind changed or not. Assuming that his meadow would not have been destroyed had not the wind changed we still think he is chargeable with negligence. Can it be said that any prudent person in the exercise of ordinary care would have trusted the safety of his property from the flames on the uncertain contingency of the stability of the wind? We are satisfied he would not. His property surrounded the fire on all sides, and the fire was ready to seize on and destroy every particle of vegetation within its reach, and fences and houses as well.

"A party against whom a trespass is committed has no right by his own action, or by neglecting the obvious and ordinary means of preventing or lessening the damages, to make them more than they otherwise would have been, and this rule is simply one of good faith and fair dealing." [Talley v. Courter, 93 Mich. 473, 53 N. W. 621.] "He should do what is reasonably practicable." [Hoyle v. Railroad, 28 Hun (N. Y.) 1. c. 363.] The danger was obvious and the failure of plaintiff to act with reasonable promptness to put out the fire shows a want of "good faith and fair dealing."·

Under his own showing plaintiff was not entitled to recover on the first count.

Passing to the second count, the principal point made by defendant is that the court should have sustained the demurrer to the evidence, mainly on the ground of contributory negligence. It appears that plaintiff was driving the mule colt and its mother from one part of his farm to another and found it necessary to cross defendant's track at a private crossing maintained on his farm by defendant. The colt became entangled in a fallen telephone wire that lay in the crossing, frightened, ran away, and ran into the right of way fence and cut its throat on the barbed wire. The telephone line had been erected some months before by a telephone company and the poles had been set just inside the right of way fence. The telephone company had been ordered by defendant not to place its line on defendant's right of way, but the evidence shows that the line had been there long enough for defendant to have had knowledge of its presence and to have removed it. It is hardly necessary to say that it was the duty of defendant to use reasonable care to keep the crossing clear of obstructions and a negligent breach of that duty would constitute a cause of action in favor of plaintiff, for whose particular benefit the crossing was maintained, for damages sustained on account thereof. We do not agree with defendant that the negligence in suffering the fallen wire to remain on the crossing was a remote, not the proximate, cause of the death of the animal. It was the thing that set in motion the chain of events that produced the injury and, as such, was the direct cause. The fright and terror of the colt were natural results and were not a subsequent and independent cause.

The fact on which defendant bases its argument that plaintiff was guilty in law of contributory negligence, is his admission that some weeks before the accident he saw the wire lying on the crossing and did not

remove it. We think plaintiff would have been justified in abstaining from meddling with property maintained on defendant's right of way apparently with the sanction of defendant, and might have assumed that defendant would exercise reasonable care and diligence in removing the obstruction. Finding that defendant had been remiss in the discharge of such duty plaintiff had the right to use the crossing, with the obstruction on it, in the manner attempted, unless the danger to the colt appeared so glaring and imminent that a reasonably prudent person in the situation of plaintiff would not have attempted to force the colt to pass over the crossing. We think the issue of contributory negligence was for the jury to solve.

The cause is ordered reversed as to the first count and affirmed as to the second count. All concur.